# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| **GREGORY PAUL VIOLETTE,** and **BARBARA A VIOLETTE,** | ) ) ) | |
| **Plaintiffs,** | ) ) ) | **Civil Action No.: 2:26-cv-00064** |
| **v.** | ) ) ) | **Removed from the Circuit Court of Covington County, Alabama, Case No.: 23-CV-2025-900180** |
| **CARRINGTON MORTGAGE SERVICES, LLC, SHIRLEY CARRINGTON, JOHN DOE ONE, BRETT WILBUR, JOHN DOE TWO, TED RAY, JOHN DOE THREE,** | ) ) ) ) ) ) ) | |
| **Defendants.** | ) ) | |

## DEFENDANT CARRINGTON MORTGAGE SERVICES, LLC'S MOTION TO DISMISS

**COMES NOW** Defendant Carrington Mortgage Services, LLC ("Carrington"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. Rule 9(b) and 12(b)(6), hereby respectfully moves this Court to dismiss all claims asserted by Plaintiffs Gregory Paul Violette and Barbara A. Violette (together, "Plaintiffs") in their Complaint (the "Complaint").[1] In support thereof, Carrington states as follows:

---

[1] Plaintiffs' Complaint is attached as part of Exhibit A to Carrington's Notice of Removal. (Doc. 1-1 at 10, hereinafter cited as Compl.).

**INTRODUCTION**

Plaintiffs' lawsuit contains unclear legal theories and an utter lack of factual allegations, and serves as a classic example of a shotgun pleading that fails as a matter of law. Moreover, each of Plaintiffs' five counts are individually deficient as a matter of law. For each of the reasons explained below, Plaintiffs' claims against Carrington are due to be dismissed.

On December 7, 2023, Plaintiffs took out a "Purchase Money Mortgage" in favor of Carrington (the "Mortgage") secured by the real property located at 603 N Main St, Opp, Alabama 36467.[2] The Mortgage was executed by Plaintiffs and notarized at the time of execution. **Exhibit A**.

Plaintiffs commenced this action against Carrington, Shirley Carrington, John Doe One, Brett Wilbur, John Doe Two, Ted Ray, and John Doe Three (collectively, the "Defendants"),[3] in the Circuit Court of Covington County where this action was removed from. *See* Compl.; Doc. 1. Plaintiffs' Complaint contains five causes of action against Defendants arising from Plaintiffs' Mortgage with Carrington. *See*

---

[2] A true and correct copy of the Mortgage is attached hereto as **Exhibit A**. Generally, courts may take judicial notice of public records without converting a motion to dismiss to one for summary judgment. *See Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010). The Mortgage is a publicly recorded document that was recorded in Covington County records on December 18, 2023 at Mortgage Book 2023, Page 21776.

[3] The other named defendants include Shirley Carrington, Ted Ray, and Brett Wilbur. Upon information and belief, Shirley Carrington is a fictitious name; Defendant Brett Wilbur currently serves as an EVP, Chief Information Officer at Carrington; and Defendant Ted Ray was previously employed by Carrington as an EVP, Mortgage Lending.  Further, as of the date of filing this Motion to Dismiss, the docket does not reflect proper service on any party besides Carrington. *See* Fed. R. Civ. P. 4. Further, as noted below, there is no specific allegation of wrongdoing alleged against any of these individual defendants.

Compl.[4] These allegations are lodged against "Defendants" collectively, with no mention of any specific party outside the case caption. *Id.* Plaintiffs contend that "Defendants": 1) committed a breach of contract through escrow agreement violations; 2) violated the Real Estate Settlement Procedures Act ("RESPA") (12 U.S.C. § 2605); 3) committed conversion (civil theft of funds); 4) violated consumer protection laws; and 5) caused a breach of fiduciary duty and escrow mismanagement. *See* Compl.

As this Court has previously been informed, Plaintiff Gregory Paul Violette is a serial litigant with an extensive history of criminal and civil litigation in both state and federal courts.[5] In fact, Plaintiff Gregory Paul Violette has a history of initiating suits against financial institutions like Carrington.[6] Plaintiff Barbara A. Violette is believed to be his wife. Here, like in many of the actions historically brought by Plaintiff Gregory Paul Violette, Plaintiffs' complaint fails to state any cause of action.

---

[4] As noted below, the Complaint doesn't actually allege who their "mortgage and escrow agreement" is with.

[5] *Violette v. West Capital Lending, Inc. et al.*, No. 2:25-cv-01020-ECM-JTA, Doc. 2, 2-1 (M.D. Ala. Dec. 23, 2025).

[6] *See, e.g., id.*; *Violette v. TD Bank*, 1:21-cv-00056-GZS (D. Me. Feb. 16, 2021); *Violette v. Click Bank*, No. 1:20-cv-00412-NT (D. Me. Nov. 4, 2020); *Violette v. Capital One*, No. 1:20-cv-00472-GZS (D. Me. Dec. 21, 2020); *Violette v. Citi Bank*, No. 1:20-cv-00477-GZS (D. Me. Dec. 23, 2020).

## **LEGAL STANDARD**

**A.     Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim**

A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint. *See* Fed. R. Civ. P. 12(b)(6). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

A court "considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth." *Id.* at 664. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A complaint must nudge claims "across the line from conceivable to plausible." *Id.* at 680. A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. "Dismissal for failure to state a claim is proper if the factual allegations are not 'enough to raise a right to relief above the speculative level.'" *Edwards v. Prime, Inc*., 602 F.3d 1276, 1291 (11th Cir. 2010) (quoting *Rivell v. Private Health Care Sys., Inc*., 520 F.3d 1308, 1309 (11th Cir. 2008)). "Stated differently, the factual allegations in the complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief.'" *Edwards*,

602 F.3d at 1291 (quoting *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007)).

## B.   *Pro Se* Litigants

Federal courts must "show a leniency to *pro se* litigants not enjoyed by those with the benefit of a legal education." *GJR Invs., Inc. v. Cty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998). A document filed *pro se* is "to be liberally construed," and a *pro se* complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotations omitted).

Despite this leniency, a *pro se* plaintiff must still comply with the threshold requirements of the Federal Rules of Civil Procedure. *Beckwith v. Bellsouth Telecomms. Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005). Importantly, a district court "does not have license to rewrite a deficient pleading," and—like complaints drafted by attorneys—a *pro se* complaint must be dismissed if it fails to state a claim on which relief may be granted. *See, e.g.*, *Osahar v. U.S. Postal Serv.*, 297 F. App'x 863, 864 (11th Cir. 2008); *Albrata v. Advan, Inc.*, 490 F.3d 826, 834 (11th Cir. 2007); *see also Trawinski v. United Tech.*, 313 F.3d 1295, 1297 (11th Cir. 2002); *Thomas v. Pentagon Fed. Credit Union*, 393 F. App'x 635, 637 (11th Cir. 2010) (leniency to *pro se* party "does not require or allow courts to rewrite an otherwise deficient pleading in order to sustain an action"); *GJR Invs., Inc.*, 132 F.3d at 1369

(courts do not have a "license to serve as *de facto* counsel for a party"); *Osahar v. U.S. Postal Serv.*, 297 F. App'x 863, 864 (11th Cir. 2008) ("[A] district court does not have license to rewrite a deficient pleading.").

Because Plaintiffs have not met, and cannot meet, the necessary elements of any claim against Carrington, the Complaint should be dismissed.

## **ARGUMENT**

### I.   **The Complaint Should be Dismissed in its Entirety Because it is an Impermissible Shotgun Pleading.**

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Pleadings that make it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief" are considered shotgun pleadings. *Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). "Courts in the Eleventh Circuit have little tolerance for shotgun pleadings." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (collecting cases).

Plaintiffs' Complaint is a brief, disjointed, and inconsistent recitation of legal theories and allegations unsupported by particularized facts. The Complaint consists of largely repetitive and conclusory allegations, and Plaintiffs do not attribute any alleged conduct to any particular defendant. In fact, not a single allegation is directed at Carrington specifically – the allegations are alleged globally against "Defendants"

– to include Carrington as well as individuals, one of whom appears not to exist. These kinds of confusing and bare bones pleadings make it impossible to understand what, if anything, Plaintiffs are attempting to allege Carrington did wrong (as opposed to any other named defendant).

Plaintiffs' breach of contract, violation of RESPA, conversion, violation of consumer protection laws, and breach of fiduciary duty claims all rest on the same unsupported allegations that "Defendants" somehow *may have* mishandled their escrow funds. Each claim ultimately rests upon Plaintiffs' averment that "[D]efendants caused things to [them] during the loan payment and escrow stage that was fraud." Compl., at 1. Plaintiffs don't allege a time-frame for when this purportedly happened.

Plaintiffs list what they allege Defendants are "required" or "mandated" to do under their "mortgage and escrow agreement" but fail to describe specific actions or inactions of Carrington demonstrating non-compliance with any legal obligation. For example, Plaintiffs' breach of contract claim fails to allege any wrongful action of any defendant. Compl., ¶ 1. The allegation is purely hypothetical and conclusory in nature, stating that "*if* taxes are waived and the servicer is holding the money" then they have committed a breach of contract. *Id.* (emphasis added). Plaintiffs' RESPA claim suffers a similar fatal flaw. By merely listing RESPA requirements and making only a conclusory statement that "holding funds after taxes have been

waived is an illegal escrow surplus retention," Plaintiffs have provided no more than a recitation of law. Compl., ¶ 2.

These examples are not exclusive, but provide insight regarding the general nature of Plaintiffs' Complaint, in that, Plaintiffs are throwing out vague allegations related to their escrow account to see what might stick – without actually setting forth any specific allegation related to their own account that would suggest that Carrington (or any other defendant) somehow engaged in something improper. Nor do Plaintiffs allege when this allegedly occurred. This type of pleading does not comply with Fed. R. Civ. P. 8 pleading standards, and as a result, Plaintiffs' entire Complaint should be dismissed.

## II.    Plaintiffs' Claims are Also Individually Deficient as a Matter of Law.

### 1.    *Plaintiffs have failed to state a claim for breach of contract.*

In order to allege a claim for breach of contract under Alabama law, a plaintiff must satisfy the following elements: "(1) a valid contract binding the parties; (2) the [claimant's] performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Capmark Bank v. RGR, LLC*, 81 So. 3d 1258, 1267 (Ala. 2011) (citing *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105 (Ala. 2002)). Thus, as prerequisite to stating a breach of contract claim, Plaintiffs "must first establish the existence of a valid contract with [the defendant]." *Webb v. Ocwen Loan*

*Servicing, LLC*, No. 1:11-cv-732, 2012 WL 5906729, at *8 (S.D. Ala. Nov. 26, 2012).

Aside from a conclusory statement listing "Defendants'" supposed obligations under their "mortgage and escrow agreement," Plaintiffs did not allege any facts indicating the existence of a valid contract binding the parties. Compl., ¶ 1. To sufficiently plead the existence of a valid contract, the first element of a breach of contract claim, Plaintiffs must plead facts signifying "an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract." *Gunn v. Bank of Am., N.A.*, No. 2:16-CV-161-WKW-PWG, 2016 WL 9340247, at *4 (M.D. Ala. May 20, 2016), *report and recommendation adopted sub nom.* 2016 WL 3677150 (M.D. Ala. July 11, 2016). Plaintiffs failed to provide any detail whatsoever to allow Carrington or the other defendants to positively identify the agreement that allegedly forms the basis of their Complaint. Plaintiffs never even clearly identify the parties to the "mortgage and escrow agreement." Compl., ¶ 1. While Carrington has attached a copy of a Mortgage agreement it has with Plaintiffs, this does not cure Plaintiffs' deficient pleading. But even if Plaintiffs sufficiently pled the existence of a valid contract (or the Complaint can be deciphered to relate to the Carrington Mortgage attached hereto), they still fail to satisfy the remaining components to state a claim.

For instance, Plaintiffs make no assertions as to their own performance under the "mortgage and escrow agreement." They allege only what the "mortgage and escrow agreement requires the servicer to" do, without mention of their own reciprocal obligations. *See* Compl., ¶ 1. Plaintiffs also fail to identify a specific provision of any agreement that Carrington (or any other defendant) allegedly breached. As discussed above, Plaintiffs only claim that "*if* taxes are waived and the servicer is holding the money," then a breach of the escrow agreement occurred. *Id.* Essentially Plaintiffs are not even alleging Carrington has engaged in wrongdoing – but merely that Carrington (or potentially some other defendant) *may* have done so but only if Carrington (or potentially some other defendant) did something the "mortgage and escrow agreement" prohibits. So in essence, Plaintiffs have not even plausibly alleged that Carrington has in fact done anything wrong. Even assuming Plaintiffs have sufficiently stated a breach occurred by simply averring "Defendants" charged an escrow amount for no valid purpose or retained "funds not authorized in the contract" – they still fail to identify the provisions of the contract under which these alleged "breaches" occurred. *Id.* As such, Plaintiffs' allegations are insufficient to state the second and third elements of a breach of contract claim, *i.e.*, their own performance and Defendants' nonperformance. *See Gunn*, 2016 WL 9340247, at * 5 (holding plaintiffs failed to state a plausible breach of contract claim where plaintiffs "point to no specific provision" which defendant supposedly breached). Moreover,

Plaintiffs do not assert any actual damages suffered as a result of the alleged breach. *Lett v. CitiFinancial Servicing, LLC*, No. 2:17-CV-336-MHT-TFM, 2017 WL 6816719, at *2 (M.D. Ala. Dec. 19, 2017), *report and recommendation adopted sub nom.* 2018 WL 315256 (M.D. Ala. Jan. 5, 2018) ("[T]he Court concludes that Plaintiff's breach of contract claim fails because he can not prove damages, which is an element of the prima facie case…").

For all of the reasons discussed above, Plaintiffs' breach of contract claim against Carrington should be dismissed.

### 2. Plaintiffs have failed to allege any viable cause of action against Carrington for violations of the Real Estate Settlement Procedures Act ("RESPA").

Plaintiffs' claim under the Real Estate Settlement Procedures Act ("RESPA") fails as a matter of law.

Because Plaintiffs state that "[h]olding funds after taxes have been waived is an illegal escrow surplus retention" in violation of 12 U.S.C. § 2605, Carrington will first address this cause of action as arising under 12 U.S.C. § 2605(g). This section governs the administration of escrow accounts and states that "the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due." *Id.* Plaintiffs, however, do not seem to allege that Carrington or any other defendant failed to *make payments* required under section 2605(g). As such, Carrington will proceed by

addressing Plaintiffs allegations in accordance with the regulations promulgated thereunder at Regulation X. *See* 12 C.F.R. § 1024. Specifically, section 1024.17(f)(2)(i) of Regulation X provides that:

> If an escrow account analysis discloses a surplus, the servicer shall, within 30 days from the date of the analysis, refund the surplus to the borrower if the surplus is greater than or equal to 50 dollars ($50). If the surplus is less than 50 dollars ($50), the servicer may refund such amount to the borrower, or credit such amount against the next year's escrow payments.

However, this section also states that "[t]hese provisions regarding surpluses *apply if the borrower is current* at the time of the escrow account analysis." *Id.* at 1024.17(f)(2)(ii) (emphasis added). Therefore, pursuant to this section, Plaintiffs are "required to specify that the 'borrower is current' for the protections related to surpluses to be triggered." *See Consumer Fin. Prot. Bureau v. Ocwen Fin. Corp.*, No. 9:17-CV-80495, 2019 WL 13203852, at *13 (S.D. Fla. Sept. 30, 2019).

Because Plaintiffs have not specifically alleged they were current on their loan at the time Carrington conducted escrow analyses, their RESPA claim must fail for this reason alone.

Second, and independently, Plaintiffs' RESPA claim also fails because they do not sufficiently allege that they suffered any cognizable damages, or that they are entitled to statutory damages. *Tallent v. BAC Home Loans*, No. 2:12-cv-3719, 2013 WL 2249107, at *5 (N.D. Ala. May 21, 2013) ("The Eleventh Circuit has held that to state a claim under RESPA, a plaintiff must allege facts showing he suffered actual

damages or is entitled to statutory damages. Additionally, . . . plaintiff must also allege a causal link between the claimed damages and defendant's alleged RESPA violation.") (citations omitted); *see also Patrick v. CitiFinancial Corp., LLC*, No. 3:15-cv-296, 2015 WL 3988860, at *4 (M.D. Ala. June 30, 2015) (dismissing RESPA claim in part because plaintiff "has not identified any damages stemming from an alleged RESPA violation"). "It is well-settled that '[d]amages are an essential element of a RESPA claim.'" *Nelson v. Nationstar Mortg.*, LLC, 504 F. Supp. 3d 1307, 1317 (S.D. Ala. 2020) (quoting *Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003, 1011 (11th Cir. 2016)).

To this end, Plaintiffs do not allege any cognizable damage stemming from the alleged violation. This makes sense – given that it appears from the Complaint that Plaintiffs aren't even alleging Carrington actually did anything wrong – just that it *may* have. In Plaintiffs' "conclusion" they do not state how they were harmed— or even that they actually suffered harm—they only "ask the court to award [them] $250,000 and stop the defendants from committing fraud…[and] award [them] $100,000 in punitive damages." Compl., at 3. Such request for damages does not constitute "actual damages," let alone damages that are causally linked to any asserted RESPA violation.

Therefore, for the reasons explained above, Plaintiffs have failed to state a claim for relief arising under RESPA or Regulation X and any such claim against Carrington should be dismissed by this Court.

### 3.    Plaintiffs have failed to plead elements sufficient to state a claim of conversion.

"To establish a claim of conversion in Alabama, one must present proof of a wrongful taking, an illegal assumption of ownership, an illegal use or misuse of another's property, or a wrongful detention or interference with another's property." *Nelson*, 504 F. Supp. 3d at 1323 (internal quotation mark omitted). Money "may be subject to a conversion claim," but only "where there is an obligation to keep that money intact or deliver it." *Id.* (quoting *SouthTrust Bank v. Donely*, 925 So. 2d 934, 939 (Ala. 2005)). Alabama law sharply curtails the use of a conversion theory where the item being converted is money. *Selman v. CitiMortgage, Inc.*, No. CIV.A. 12-0441-WS-B, 2013 WL 838193, at *13 (S.D. Ala. Mar. 5, 2013). In fact, the Alabama Supreme Court "has repeatedly held that an action for the conversion of money is improper unless there is earmarked money or specific money capable of identification." *Id.* (collecting cases). However, "funds in an escrow account reside segregated enough to qualify as specific and identifiable." *Lee Co. v. Rockby, Inc.*, No. 5:16-CV-02019-HNJ, 2017 WL 7248798, at *3 (N.D. Ala. Oct. 27, 2017) (quoting *Willingham v. United Ins. Co. of America*, 628 So. 2d 328, 333 (Ala. 1993) (internal quotation marks omitted). But, "conversion requires more than a debtor-

creditor relationship—there must also exist an obligation to return the identical money." *Id.* at *4.

Plaintiffs cannot sustain their conversion claim against Carrington because they have not demonstrated an obligation of Carrington to return the money held in escrow. While Plaintiffs claim that their "property taxes were waived, and the taxes were no longer owed" they provide no facts to support these conclusions. Compl., ¶ 3. The Mortgage provides that Carrington may waive Plaintiffs' obligation to pay for any or all escrow amounts at any time, however, "[a]ny such waiver may only be in writing." (Ex. A, ¶ 3). Because they have not alleged the existence of such written agreement, Plaintiffs have failed to assert facts credibly demonstrating an obligation of Carrington to return the money held in escrow. They don't even allege the amount that Carrington is supposedly holding that should be returned, or the amount of taxes that were paid that allegedly should not have been, or the years in which this wrongful activity supposedly occurred. Further, notwithstanding any agreement, the Complaint lends no support to a claim that Carrington misused Plaintiffs' property or claimed ownership over the escrow funds.

As a matter of law, Plaintiffs have failed to state a conversion claim against Carrington, and therefore, this claim should be dismissed.

**4.    Plaintiffs cannot maintain a claim for a violation of the Alabama Deceptive Trade Practices Act ("ADTPA") as a matter of law.**

Because Plaintiffs allege Defendants "caused [them] Unfair and Deceptive Acts or Practices (UDAP)," and that "[e]very state has consumer protection laws," Carrington will address this count under the standards to state a claim for relief under the Alabama Deceptive Trade Practices Act ("ADTPA").

"In order for a plaintiff to recover under the ADTPA, he or she must prove that (1) he or she is a 'consumer,' (2) made a pre-suit demand, and (3) suffered monetary damages as a result of the Defendant's violation of the ADTPA." *Pinon v. Daimler AG*, No. 1:18-CV-3984-MHC, 2019 WL 11648560, at *25 (N.D. Ga. Nov. 4, 2019) (internal quotation marks omitted) (quoting *In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*, No. 1:13-MD-2495-TWT, 2018 WL 2929831, at *7 (N.D. Ga. June 8, 2018). However, Plaintiffs have not and cannot state a claim against Carrington arising under the ADTPA.

*A. The ADTPA does not apply to Plaintiffs' allegations against Carrington because mortgage loans and servicing are not "goods" or "services" as defined under the act.*

The ADTPA provides a cause of action for "consumers," and defines consumer as a person "who buys goods or services for personal, family, or household use." *See* Ala. Code § 8-19-3(2). Only "consumers" have private rights of action under this section. *Id.* § 8-19-10; *Deerman v. Fed. Home Loan Mortg. Corp.*, 955 F. Supp. 1393, 1399 (N.D. Ala. 1997), *aff'd sub nom. Deerman v. Fed. Home Loan*

*Mortg.*, 140 F.3d 1043 (11th Cir. 1998).When presented with the question of "whether or not a mortgage transaction and the ownership and servicing of a mortgage fall within the provisions of the Alabama DTPA," district courts in Alabama have been "of the opinion [that] a mortgage loan is not a good or service" under this statute. *Id.* at 1399.

Because any claim against Carrington arising under the ADTPA is predicated on Plaintiffs' Mortgage, servicing, and/or escrow account—and none of these are "goods" or "services" as defined in the statute—Plaintiffs are not "consumers" and do not have a private right of action under the statute. However, even if the Court determines that Plaintiffs fall within the definition of "consumer" and have a private right of action, they have still failed to state a claim under the ADTPA.

   B.  *Plaintiffs failed to allege a pre-suit demand was made as required by the ADTPA and further do not allege damages.*

Plaintiffs have not alleged they made a "pre-suit demand" on Carrington. "The Alabama DTPA provides that 'at least 15 days prior to the filing of any action under this section,' a prospective plaintiff must file a 'written demand' for relief that 'reasonably decrib[es] the unfair or deceptive act or practice relied upon and the injury suffered.'" *Deerman*, 955 F. Supp. at 1399-400 (citing Ala. Code § 8-19-10). Plaintiffs fail to allege that they made a written demand for relief to Carrington, and

failure to comply with this requirement is fatal to an ADTPA claim. *Id.* at 1400.[7] Furthermore, Plaintiffs neglect to allege actual money damages suffered as a result of the alleged ADTPA violation required to make this claim.

### C. Plaintiffs fail to make claims with the specificity required under Fed. R. Civ. P. 9(b).

Notwithstanding the fact that Plaintiffs' claim under the ADTPA fails as a matter of law, to the extent Plaintiffs attempt to make general allegations of fraud (as implied by the title of their Complaint, "Plaintiffs' Civil Suit of Fraud"), such claims are entirely unsupported and non-specific.

Plaintiffs' ADTPA claim fails to allege facts sufficient to satisfy Fed. R. Civ. P. 9(b). "Rule 9(b) is satisfied if the complaint sets forth '(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Kornegay*, 614 F. Supp. 3d at 1036 (internal quotation marks and citations omitted).

Plaintiffs recount that state consumer protection laws prohibit "misrepresenting escrow requirements," "charging for taxes not owed," and

---

[7] While an exception does exist to the demand requirement if "the prospective respondent does not maintain a place of business or does not keep assets within the state," Plaintiffs fail to allege the potential applicability of this exception. Ala. Code § 8-19-10(e)

"deceiving homeowners about escrow status." Compl., ¶ 4. However, in support of their "UDAP" claim Plaintiffs succinctly state that "[they] are claiming: [d]eceptive business practices" and "[u]nfair financial conduct." *Id.* These bare bone "claims" are insufficient to satisfy the federal standard that Plaintiffs must plead fraud with particularity. *Cf. Kornegay*, 614 F. Supp. 3d at 1036 (specifically describing that "[d]efendant's deceptive acts and practices include ... [o]mitting any information that the rubber molded inserts used in its firearms would degrade under conditions of normal and expected use…"). Once again, Plaintiffs also fail to state any consequences or damages they suffered as a result of Carrington and the other defendants' alleged unfair financial conduct and/or deceptive business practices.

For the multiple reasons explained above, Plaintiffs have not stated a claim under the ADTPA, or any claim based on fraud, and therefore such claims should be dismissed.

### 5.    *Plaintiffs fail to state a claim for breach of fiduciary duty and escrow mismanagement.*

There is a "substantial, unbroken line of authority supporting the proposition that Alabama law does not recognize a general fiduciary duty running from a mortgagee to a mortgagor." *Selman*, 2013 WL 838193, at *10 (citing *Forester v. Bank of America, N.A.*, 2012 WL 3206471, *8 (S.D. Ala. Aug. 7, 2012) ("Alabama law does not recognize a general fiduciary duty owed by a mortgagee, like BAC, to a mortgagor, like Forester, by virtue of the mortgagee extending a mortgage loan")).

And otherwise, Plaintiffs offer "no facts showing any kind of special relationship between them" and Carrington or any other defendant. *Id.*; Compl., ¶ 5.

While Plaintiffs may believe their claim is supported by "cases in which courts in *specific circumstances* have found that an *escrow agent* may have a fiduciary duty to parties to an escrow account," this argument would still fail as a matter of law because "[n]one of those authorities appear to have arisen in a mortgage loan servicer context." *Selman*, 2013 WL 838193, at *10 (emphasis added). The "special relationship" creating a fiduciary duty that courts have determined may arise in "particular arrangements in which an entity holds funds for the benefit of another[,] *in no way supports a general rule*… that mortgage servicers owe fiduciary duties to mortgagors as a matter of course." *Id.* (emphasis added).

Plaintiffs' claim for breach of fiduciary duty and escrow mismanagement rests upon the singular conclusory statement that "[t]he [d]efendants [s]ervicers hold escrow funds in a fiduciary capacity." Compl., ¶ 5. However, Plaintiffs do not attempt to demonstrate any special relationship creating such fiduciary duty, nor do Plaintiffs identify who "The Defendants Servicers" are. *Id.* For this reason, Plaintiffs' breach of fiduciary duty claim is due to be dismissed.

## <u>CONCLUSION</u>

**WHEREFORE**, premises considered, Carrington respectfully requests that the Court grant this Motion and dismiss with prejudice each and every claim asserted

against it by Plaintiffs for failure to state a claim, pursuant to Rule 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

Respectfully submitted, this 4th day of February, 2026.

/s/ Jon Patterson
Jon Patterson (PAT066)
BRADLEY ARANT BOULT CUMMINGS, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
jpatterson@bradley.com
*Attorney for Defendant Carrington*
*Mortgage Services, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2026, this pleading was e-filed and further that I served a copy of the foregoing via first-class U.S. Mail, postage prepaid, to the following:

Gregory Paul Violette
Barbara A Violette
19992 Airport Road
Andalusia, AL 36421

*Pro se Plaintiffs*

/s/ Jon Patterson
OF COUNSEL