IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| GREGORY PAUL VIOLETTE, ) <br> and BARBARA A VIOLETTE, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> CARRINGTON MORTGAGE ) <br> SERVICES, LLC, SHIRLEY ) <br> CARRINGTON, JOHN DOE ONE, ) <br> BRETT WILBUR, JOHN DOE ) <br> TWO, TED RAY, JOHN DOE ) <br> THREE, ) <br> ) <br> Defendants. ) | Civil Action No.: 2:26-cv-00064 <br><br> Removed from the Circuit Court of Covington County, Alabama, Case No.: 23-CV-2025-900180 |

**<u>DEFENDANT CARRINGTON MORTGAGE SERVICES, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT</u>**

**COMES NOW** Defendant Carrington Mortgage Services, LLC ("Carrington"), by and through undersigned counsel and pursuant to this Court's February 4, 2026 Order (Doc. 8), and files its reply to Plaintiffs Gregory Paul Violette and Barbara A. Violette's (together, "Plaintiffs") opposition to Carrington's Motion to Dismiss (Doc. 11). For the reasons set forth herein, as well as those set forth in Carrington's Motion to Dismiss (Doc. 6), Plaintiffs' Complaint is due to be dismissed in its entirety. In further support thereof, Carrington respectfully states as follows:

1

## **INTRODUCTION**

On December 15, 2025, Plaintiffs commenced this action against Carrington, Shirley Carrington, John Doe One, Brett Wilbur, John Doe Two, Ted Ray, and John Doe Three (collectively, the "Defendants") in the Circuit Court of Covington County, Alabama. Doc. 1-1. Carrington removed the action to this Court and subsequently filed a Motion to Dismiss. Doc. 1; Doc. 6. As set out in Carrington's Motion to Dismiss, Plaintiffs' lawsuit contains an utter lack of factual allegations and is a clear example of an impermissible shotgun pleading that should be dismissed. *See* Doc. 6. Moreover, each of Plaintiffs' claims are individually deficient and due to be dismissed. *See id.*

Plaintiffs' response fails to appropriately respond to the issues raised by Carrington in its Motion to Dismiss and does not put forth any viable reason why this case should not be dismissed. Plaintiffs provide no rebuttal to the numerous meritorious arguments advanced by Carrington in support of dismissal of their Complaint. Rather than addressing the merits of Carrington's arguments, Plaintiffs' response reiterates only the same conclusory statements of law provided in their Complaint. Yet, Plaintiffs maintain that they have sufficiently pled claims against Defendants collectively for: (1) Breach of Contract and Escrow Violation; (2) Violations of RESPA (12 U.S.C. § 2605); (3) Conversion / Wrongful Retention of Funds; (4) Unfair and Deceptive Acts or Practices; and (5) Breach of Fiduciary Duty.

However, Plaintiffs have not—and cannot—allege any facts in support of these claims.

## ARGUMENT AND AUTHORITIES

**1. Plaintiffs' Complaint is insufficient as a matter of law because Plaintiffs are not exempt from federal pleading standards as *pro se* litigants.**

Plaintiffs maintain that their Complaint must be "construed liberally—as required for *pro se* litigants," and when construed liberally "it clearly alleges factual conduct giving rise to multiple cognizable causes of action, including breach of contract, violations of the Real Estate Settlement Procedures Act ("RESPA"), conversion, unfair and deceptive practices, and breach of fiduciary duty." Doc. 11, at 1. In reality, Plaintiffs' Complaint is completely devoid of factual conduct, and does not "give rise" to *any* cognizable cause of action.

As highlighted in Carrington's Motion to Dismiss, *pro se* litigants enjoy a leniency not afforded to those with a legal education. *See* Doc. 6, at 5 (quoting *GJR Invs., Inc. v. Cty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998)). However, this does not excuse *pro se* plaintiffs from complying with the threshold requirements of the Federal Rules of Civil Procedure. *Id.* (citing *Beckwith v. Bellsouth Telecomms. Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005)). In fact, a court's leniency to a *pro se* party "does not *require or allow* [it] to rewrite an otherwise deficient pleading in order to sustain an action." *Id.* (emphasis added) (quoting *Thomas v. Pentagon Fed. Credit Union*, 393 F. App'x 635, 637 (11th Cir. 2010)).

3

Plaintiffs' Complaint is a textbook shotgun pleading that, as defined by Plaintiffs, "generally fails to give defendants adequate notice of the claims against them and the grounds upon which each claim rests." Doc. 11, at 2. Plaintiffs oppose Carrington's characterization of their Complaint as a shotgun pleading because "[e]ach claim arises from a single nucleus of operative facts: Defendants' wrongful collection and retention of escrow funds after the tax obligation had been eliminated." *Id.* at 3. But, it is well established in this circuit that "a complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against" is an impermissible shotgun pleading. *Taylor v. Starr*, No. 1:20-CV-00489-CLM, 2021 WL 1610671, at *2 (N.D. Ala. Apr. 26, 2021) (internal quotation marks omitted).

Shotgun pleading issues arise when a complaint, like Plaintiffs', is "vague and cryptic." *Sullivan v. Prattville Health & Rehab., LLC*, No. 3:22-CV-702-RAH-JTA, 2024 WL 2755683, at *9 (M.D. Ala. May 29, 2024), *reconsideration denied*, No. 3:22-CV-702-RAH-JTA, 2024 WL 3103673 (M.D. Ala. June 24, 2024), and *report and recommendation adopted*, No. 3:22-CV-702-RAH, 2024 WL 3555366 (M.D. Ala. July 25, 2024). Merely identifying the parties, alleging that "property taxes were waived," and that "Defendants continued to collect and retain escrow funds despite no taxes being owed," is insufficient to provide clear notice of what exactly Plaintiffs

allege Carrington (as opposed to the other defendants) did wrong. As set out in Carrington's Motion to Dismiss, Plaintiffs ultimately aver that "[D]efendants caused things to [them] during the loan payment and escrow stage that was fraud." Doc. 1-1, at 1. Still, Plaintiffs fail to indicate a time-frame, identify a specific defendant, or recognize a specific tax obligation that was waived.[1] When claims are "not clearly connected to a particular, identifiable set of discrete facts," the allegations "do not obviously support any particular claim against any particular [d]efendant," and plaintiffs attempt to proceed "without explaining who violated that [law] or how" – the case cannot move forward. *Sullivan*, 2024 WL 2755683, at \*8-9.

---

[1] For instance, if Plaintiffs are claiming that they are exempt from paying property taxes on the property at issue, at a minimum they should be required to allege the basis upon which they claim such an exemption. Alabama's homestead exemption only allows such exemptions if the subject property is actually *occupied* by the person(s) claiming the exemption. ALA. DEPT. OF REV. ADMIN. CODE § 810-4-1-.23(2)(a). The property address for the loan at issue in this lawsuit is 603 N. Main St., Opp, Alabama 36467. *See* Doc. 6, at 2. However, Plaintiffs' mailing address in this action is 19992 Airport Road, Andalusia, Alabama 36421. This in-and-of-itself raises a question as to whether or not Plaintiffs can even claim a homestead exemption against the property located on Main Street in Opp, Alabama. Further, Plaintiffs have a separate lawsuit pending in this very district (*Violette, et. al. v. West Capital Lending, Inc., et. al*., 2:25-cv-01020) where they have filed suit against another lender related to alleged wrongful actions in relation to another mortgage loan taken out in 2025, apparently secured by their property on Airport Road in Andalusia, Alabama (their mailing address for this lawsuit), which would at least indicate that Plaintiffs' primary residence is not the property address at issue in this case. *See* Doc. 2, at 2 in *Violette, et. al. v. West Capital Lending, Inc., et. al*., 2:25-cv-01020). The publicly recorded Mortgage related to the property on Airport Road in Andalusia, Alabama – executed by Borrowers on June 23, 2025 – contains an occupancy requirement, wherein Borrowers are required to "occupy, establish and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy…." (June 6, 2025 Mortgage, **Ex. A**, recorded on June 25, 2025 at Book 2025, Page 11708 in the Property Records of Covington County, Alabama). Plaintiffs' Mortgage related to the property on Airport Road may be considered because "courts may take judicial notice of public record without converting the motion to dismiss into one for summary judgment." *Gunn v. Bank of Am., N.A*., No. 2:16-CV-161-WKW-PWG, 2016 WL 9340247, at \*3 (M.D. Ala. May 20, 2016), *report and recommendation adopted sub nom. Gunn v. Bank of Am.*, No. 2:16-CV-161-WKW, 2016 WL 3677150 (M.D. Ala. July 11, 2016) (citing *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010)).

5

**2. Plaintiffs have not stated any viable causes of action against Carrington.**

In opposition to Carrington's Motion to Dismiss Plaintiffs contend that, at the pleading stage, they are "not required to prove their case[,] [t]hey are only required to allege sufficient facts to state plausible claims for relief." Doc. 11, at 2. Carrington agrees. However, Plaintiffs have not just failed to allege "sufficient" facts, they have not pled *any* facts in support of their claims. *See* Doc. 1-1. Thus, there are no facts to accept in favor of Plaintiffs' claims, and the "court gives legal conclusions—e.g., formulaic recitations of the elements of a cause of action—no presumption of truth." *Emrit v. Barkley*, No. 2:23-CV-17-RAH-SMD, 2023 WL 5517242, at *2 (M.D. Ala. Aug. 7, 2023), *report and recommendation adopted*, No. 2:23-CV-17-RAH, 2023 WL 5510304 (M.D. Ala. Aug. 25, 2023).

Ultimately, Plaintiffs' Complaint is lacking any well pled, specific factual allegations to support a claim for relief against Carrington. Plaintiffs squander the opportunity to rebut Carrington's position in their response, and instead reiterate the same fruitless, conclusory allegations that Defendants "caused things that were illegal" such as: breach of contract and escrow agreement; violations of RESPA; conversion / wrongful retention of funds; unfair and deceptive acts or practices; and breach of fiduciary duty. Doc. 1-1; Doc. 11. Beyond restating conclusory allegations, Plaintiffs made no further effort to support their claims or refute Carrington's reasons for seeking dismissal.

As set out in Carrington's Motion to Dismiss, to allege a claim for breach of contract under Alabama law, a plaintiff must satisfy the following elements: "(1) a valid contract binding the parties; (2) the [claimant's] performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Capmark Bank v. RGR, LLC*, 81 So. 3d 1258, 1267 (Ala. 2011) (citing *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105 (Ala. 2002)). Doc. 6, at 8. Plaintiffs' conclusory statement that "Defendants caused a Breach of Contract, Escrow Agreement Violations" is insufficient. This "count" fails to identify the parties to such contract or escrow agreement, allege performance of Plaintiffs' reciprocal obligations, identify a specific provision that was breached, or assert any cognizable damages. Doc. 1-1, at 1-1. Plaintiffs' response to Carrington's Motion to Dismiss fails to effectively address these pleading issues. The reassertion that "the existence of a mortgage and escrow agreement require[es] Defendants to: [c]ollect escrow funds only for valid tax obligations, [c]onduct annual escrow analyses; and [r]efund escrow surpluses within the time required by law" does not permit a plausible inference that Carrington committed a breach of contract. Doc. 11, at 3. And again, Plaintiffs have not alleged what should be the minimally required allegation as ton how it is they claim a property tax exemption, given it appears the mortgage loan at issue is secured by a property which is not their primary residence.

7

Plaintiffs' RESPA claim fails for similar reasons. Instead of providing factual support, Plaintiffs' RESPA claim simply lists what "RESPA mandates," makes the conclusory statement that "Defendants caused Violations of RESPA," and provides a general statement of law that "[h]olding funds after taxes have been waived is an illegal escrow surplus retention." Doc. 1-1, at 2. As explained in Carrington's Motion to Dismiss, the provisions of Regulation X "regarding surpluses *apply if the borrower is current* at the time of the escrow account analysis," and therefore, Plaintiffs are "required to specify that the 'borrower is current' for the protections related to surpluses to be triggered." Doc. 6, at 12 (citing *Consumer Fin. Prot. Bureau v. Ocwen Fin. Corp.*, No. 9:17-CV-80495, 2019 WL 13203852, at *13 (S.D. Fla. Sept. 30, 2019)). Moreover, Plaintiffs failed to allege they suffered any damages causally linked to any RESPA violation. *See* Doc. 1-1, at 2. In their response to Carrington's Motion to Dismiss, Plaintiffs restate what "RESPA prohibits" and maintain that "Defendants knowingly retained escrow funds dispute no taxes being owed." Doc. 11, at 4. Plaintiffs argue that "[t]hese facts plausibly state a claim under RESPA," but do not address what is actually required to make a RESPA claim. Plaintiffs have not plausibly stated a claim arising under RESPA as they described in their response. *See* Doc. 11, at 4. Plaintiffs' failure to assert damages or allege that they are current as borrowers prevent this claim from surviving a motion to dismiss.

Likewise, Plaintiffs cannot sustain a conversion claim against Carrington. Plaintiffs set out in their response to the Motion to Dismiss that "[o]nce the tax obligation was waived, the escrow funds no longer served any lawful purpose and belonged to Plaintiffs," and "Defendants' refusal to return those funds constitutes conversion and unjust enrichment." Doc. 11, at 4. However, Plaintiffs' Complaint did not assert the amount allegedly held by Carrington or another defendant, any obligation of Carrington or any defendant to return money held in escrow, or a time frame in which the wrongful activity supposedly occurred. Despite Plaintiffs' recognition that "conversion occurs when a defendant exercises wrongful dominion over property belonging to another," as a matter of law, Plaintiffs have not stated a conversion claim. Doc. 11, at 4.

Additionally, Plaintiffs' response does not address the fact that any claim purporting to arise under the Alabama Deceptive Trade Practices Act ("ADTPA") fails because the ADTPA does not apply to mortgage loans and servicing, and Plaintiffs are not consumers under the act. Further, Plaintiffs did not address the requirement to make a pre-suit demand on Carrington as a prerequisite to maintain a claim under the ADTPA. Plaintiffs' recitation that "Defendants misrepresented escrow requirements and continued charging for taxes not owed" does not adequately address the evident legal issues with this claim. Doc. 11, at 4.

Lastly, while Plaintiffs purport that "[m]ortgage servicers hold escrow funds in a fiduciary or quasi-trustee capacity," Carrington has already addressed this argument in its Motion to Dismiss. While Plaintiffs seemingly refer to "cases in which courts in *specific circumstances* have found that an *escrow agent* may have a fiduciary duty to parties to an escrow account," but as Carrington has already addressed, "[n]one of those authorities appear to have arisen in a mortgage loan servicer context." Doc. 6, at 20 (citing *Selman v. CitiMortgage, Inc.*, No. CIV.A. 12-0441-WS-B, 2013 WL 838193, at *10 (S.D. Ala. Mar. 5, 2013)).

Admittedly, each of Plaintiffs' claims rests on the discrete factual allegation that "Defendants breached [their] contractual duties by continuing to demand and retain escrow funds after property taxes were waived." Doc. 11, at 3; *see* Doc. 1-1. This alone cannot plausibly allege any claim to relief.

### 3. Leave to amend should be denied because an opportunity to amend is demonstrably futile.

Plaintiffs' request for leave to amend the Complaint should be denied. "Generally, a pro se plaintiff must be afforded at least one opportunity to amend his complaint if (1) the plaintiff does not clearly indicate a lack of desire to amend and (2) a more carefully drafted amended complaint might, with more specific allegations against the proper defendant, state a claim upon which relief could be granted." *Pugh v. Bonds*, No. 2:25-CV-77-BL-SMD, 2025 WL 4236431, at *3 (M.D. Ala. Nov. 17, 2025), *report and recommendation adopted*, No. 2:25-CV-00077-BL,

10

2026 WL 451412 (M.D. Ala. Feb. 17, 2026) (citing *Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018)). However, "a district judge need not allow an amendment where amendment would be futile." *Id.* (quoting *Cornelius v. Bank of Am., NA*, 585 F. App'x 996, 1000 (11th Cir. 2014)).

A court can—and this Court should—consider the "litigant's history of bringing unmeritorious litigation when analyzing the question of frivolousness." *Emrit*, 2023 WL 5517242, at *1 (internal quotation mark omitted) (quoting *Bilal v. Driver*, 251 F.3d 1346, 1350 (11th Cir. 2001)). This Court is not unfamiliar with serial litigants. Recently, this Court denied a serial *pro se* litigant an additional an opportunity to amend where there was "no indication that…if afforded another opportunity to amend... [the complaint] would suddenly comply with the Federal Rules of Civil Procedure." *Pugh v. Bonds*, No. 2:25-CV-77-BL-SMD, 2025 WL 4236431, at *3 (M.D. Ala. Nov. 17, 2025), *report and recommendation adopted*, No. 2:25-CV-00077-BL, 2026 WL 451412 (M.D. Ala. Feb. 17, 2026). The Court rationalized that despite prior opportunities to amend, plaintiff still "filed the same or similar nonsense that does not comply with the Federal Rules of Civil Procedure" *Id.*

Plaintiffs' have requested leave to amend the Complaint and maintain that dismissal with prejudice is a "drastic remedy." However, as this Court has been made aware, Plaintiff Gregory Paul Violette is a serial litigant with extensive history of

civil litigation in state and federal courts.² *See* Doc. 6, at 3 n. 5. These claims are not brought by the typical *pro se* litigants that should be afforded leniency in stating their claims. Conversely, having initiated an excessive number of lawsuits, Plaintiff Gregory Paul Violette, is not only familiar with the pleading standards, but experienced.

In fact, since this action was initiated, Plaintiffs have already filed another complaint against Carrington in Covington County – where this case was just removed from.³ Plaintiffs have made it clear that they will continue to file complaints against Carrington and other financial services institutions despite continuously failing to state any cause of action. Plaintiffs continue to abuse the limited time and resources of this Court, and courts across the county, with their frivolous filings. Therefore, the "drastic remedy" of dismissing with prejudice is warranted.

## CONCLUSION

**WHEREFORE**, premises considered, and because Plaintiffs have failed to provide sufficient opposition to avoid dismissal, Carrington respectfully requests that the Court grant its Motion and dismiss with prejudice each and every claim

---

² In 2021, Plaintiff Gregory Paul Violette was identified as a "serial pro se litigant" by the District Court of Maine where he has filed numerous lawsuits. *Violette v. Interbake Foods, LLC*, No. 1:22-CV-00052-LEW, 2022 WL 1590772, at *1 (D. Me. May 19, 2022). In that proceeding, defendants requested the court take judicial notice that "(1) [the] [c]ourt previously convicted Plaintiff of making false statements, mail fraud, wire fraud, bankruptcy fraud, and money laundering… (2) on or about April 16, 2019, [the] [c]ourt revoked Plaintiff's supervised release and sentenced him to 27 months' confinement while also ordering him to pay $422,657.89 in restitution… and (3) Plaintiff is a serial litigant who, since 2017, has filed over fifty (50) civil actions in this Court and in Maine State Courts as a pro se plaintiff." *Violette v. McKee Foods Corp.*, No. 1:21-cv-00292, 2021 WL 7541679 (D.Me. Oct. 19, 2021).
³ *See Violette et al., v. Carrington Mortgage Services, LLC et al.*, No. 23-CV-2026-900012.00, Doc. 1 (Cir. Ct. Covington Cnty Feb. 4, 2026).

asserted against it by Plaintiffs for failure to state a claim, pursuant to Rule 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

Respectfully submitted, this 4th day of March, 2026.

/s/ Jon Patterson
Jon Patterson (PAT066)
BRADLEY ARANT BOULT CUMMINGS, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
jpatterson@bradley.com
*Attorney for Defendant Carrington Mortgage Services, LLC*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 4, 2026, this pleading was e-filed and further that I served a copy of the foregoing via first-class U.S. Mail, postage prepaid, to the following:

Gregory Paul Violette
Barbara A Violette
19992 Airport Road
Andalusia, AL 36421

*Pro se Plaintiffs*

                                            /s/ Jon Patterson
                                            OF COUNSEL